## THE AGNES MANNING.[1]

### THE MANHATTAN v. THE AGNES MANNING.

*(District Court, E. D. Pennsylvania.  October 31, 1890.)*

1. COLLISION—STEAM AND SAIL—LOOKOUTS.
    A steamer and a schooner were approaching in a clear night, on opposite courses. When the vessels were a few lengths apart the schooner was first seen by the steamer, though, as her lights were burning brightly, she should have been seen one and one-half miles away.  The steamer had only one man on lookout and three men on deck.  *Held*, the lookout was defective, and the steamer in fault for not keeping off.

2. SAME.
    Where a vessel, whose duty it is to keep off, is known to respond tardily to her wheel, she is especially bound to maintain a vigilant lookout.

3. SAME—CHANGING COURSES.
    The steamer acknowledged herself in fault, but claimed that porting her helm, when executed, would have carried the vessels clear but for the starboarding of the schooner.  The schooner acknowledged starboarding, but claimed it was done some time before the collision.  *Held*, as the evidence of the time of the schooner's starboarding was conflicting, and the probabilities were against its having been done after the steamer ported, the charge of contributory negligence was not proved.

4. SAME—CHANGE OF COURSE—IN EXTREMIS.
    Where a steamer had come so close to a schooner sailing on an opposite course, without discovering her, that extreme measures were taken to port her to avoid collision, a starboarding of the schooner then made was *in extremis* and excusable.

In Admiralty.

Petition by Clarence Birdsall *et al.*, owners, to limit the liability of the schooner Agnes Manning for collision with the steamer Manhattan, and libel by the Manhattan against the Manning.  The admitted facts were that the Manning, a large four-masted schooner from Baltimore to New York, and making 7 to 10 knots, and the steamer Manhattan from New York to West Point, Va., making 10 to 12 knots, collided near Fenwick light.  The steamer's evidence tended to show that the schooner was seen when three-fourths of a mile off, and that the steamer ported, bringing the vessels on clearing courses, and that after the steamer ported the schooner starboarded, bringing the vessels into collision.  The schooner admitted starboarding, but claimed it was done when the ves-

---

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

sels were far apart, and that the changes then made were slight, and that the steamer ported only immediately before the collision. The evidence showed that there was only one lookout (three men altogether) on the steamer's deck at the time of the collision, and that the porting was done very rapidly, the pilot and the wheelman both turning the wheel.

*Robinson, Bright, Biddle & Ward*, for libelant.

*Henry R. Edmunds* and *Curtis Tilton*, for claimant, cited—

As to the duty of an ocean-going steamer to have two lookouts: *The Colorado*, 91 U. S. 692. The duty of the steamer to see the schooner: *The Abby Ingalls*, 12 Fed. Rep. 217; *The Falcon*, 19 Wall. 75. As to the evidence necessary to show contributory negligence by the schooner: *Haney* v. *Packet Co.*, 23 How. 291. As to a change of course of the schooner, if made after porting of the steamer, being made *in extremis: The Maggie J. Smith*, 123 U. S. 355, 8 Sup. Ct. Rep. 159; *The Elizabeth Jones*, 112 U. S. 514, 5 Sup. Ct. Rep. 468; *The Cadiz*, 20 Fed. Rep. 157; *The Norwalk*, 11 Fed. Rep. 922; *The Reading*, 43 Fed. Rep. 398.

BUTLER, J. The Manhattan was in fault. The proofs show this very distinctly,—so distinctly that her proctor admitted it on the argument. Her duty required her to keep off, and she did not. Her lookout was defective, and the Manning's approach was not observed until the vessels were so near each other as to create danger, notwithstanding the fact that her lights were burning brightly and the night was favorable to a distant view. They should have been seen readily a mile and a half away, yet they were not observed until the vessels were but a few lengths apart. This is the more reprehensible because the Manhattan was known to respond tardily to her wheel.—While admitting her fault, (which is amply sufficient to account for the disaster,) she charges the Manning with contributory negligence. Such charges, under similar circumstances, are very common. The crew of the offending vessel usually seeks to relieve itself from censure and responsibility by charging the other with improper change of course and voluntarily running into danger. To sustain such a charge the evidence should be very clear. In this case it certainly is not. While the witnesses for the Manhattan say the schooner changed after they had ported, those from the latter declare just as positively that she did not. They say a slight change was made much further back, a considerable period before the Manhattan ported, and that this was the only change made. These witnesses are most likely to be accurate respecting the fact. If the wheel was changed, as charged, they must know it, while the others might be mistaken; and they certainly have no greater motive for falsifying than the latter. Besides, they are supported by the probabilities of the case. It is improbable that she would so change after seeing the Manhattan turn in that direction and thus run into greater danger. It is quite clear, to say the least, that the charge of contributory negligence is not proved.

If it were proved, however, it would not tend to relieve the steamer. The vessels were then in peril, and the change, though erroneous, would be excusable. That the situation was perilous when the steamer ported

cannot well be doubted; the conduct of the officers shows it. They resorted immediately to extreme measures, such as are only taken to escape threatened danger. It is evident they were seriously alarmed.

The steamer's claim to damages cannot, therefore, be sustained, and a decree must be entered accordingly.